**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION**

| | |
|---|---|
| BLUE SPIKE, LLC<br><br>                      Plaintiff,<br><br>   v.<br><br>AUDIBLE MAGIC CORPORATION<br><br>                      Defendant.<br><br>and ELECTRONIC FRONTIER FOUNDATION<br><br>                      Intervenor | 6:16mc22<br>SEVERED FROM<br>Civil Action No. 6:15-cv-00584-RWS-CMC |

**OPPOSED MOTION OF THE ELECTRONIC FRONTIER FOUNDATION FOR
SANCTIONS PURSUANT TO 28 U.S.C. § 1927 AND
THE COURT'S INHERENT AUTHORITY**

**TABLE OF CONTENTS**

|  |  | Page |
|---|---|---|
| I. | INTRODUCTION | 1 |
| II. | FACTUAL BACKGROUND | 2 |
| | A. EFF Attempts to Resolve the Issues Without Court Intervention | 2 |
| | B. EFF Files Its Motion and Blue Spike Opposes | 3 |
| | C. The Court Grants EFF's Request to Unseal | 5 |
| | D. Blue Spike Admits It Had No Basis to Oppose EFF's Motions | 5 |
| III. | ARGUMENT | 6 |
| | A. The Court Can Sanction Garteiser for Its Unreasonable and Vexatious Oppositions to EFF's Motion Under 28 U.S.C. § 1927 and Can Sanction Blue Spike and Garteiser Under the Court's Inherent Authority | 6 |
| | B. EFF Should Be Awarded Its Fees | 8 |
| IV. | CONCLUSION | 10 |

i

## TABLE OF AUTHORITIES

**Page**

**Cases**

*Chambers v. Nasco, Inc.*,
 501 U.S. 32 (1991) ............................................................................................................. 7

*Edwards v. General Motors Corp.*,
 153 F.3d 242 (5th Cir. 1998) ...................................................................................... 6, 7, 10

*Fairley v. Patterson*,
 493 F.2d 598 (5th Cir. 1974) ...................................................................................... 7, 9, 10

*In re Violation of Rule 28(D)*,
 635 F.3d 1352 (Fed. Cir. 2011) .................................................................................. 7, 9, 10

*Nixon v. Warner Commc'ns, Inc.*,
 435 U.S. 589 (1978) ............................................................................................................. 8

*Richmond Newspapers, Inc. v. Virginia*,
 448 U.S. 555 (1980) ............................................................................................................. 8

**Statutes**

28 U.S.C. § 1927 ............................................................................................................................ 6

Intervener the Electronic Frontier Foundation ("EFF") respectfully moves for an order, sanctioning Blue Spike, LLC's ("Blue Spike") and its counsel Garteiser Honea, P.C. ("Garteiser") pursuant to this court's inherent authority, and sanctioning Garteiser under 28 U.S.C. § 1927, for their baseless, unreasonable, and vexatious opposition to EFF's motions to intervene and unseal certain documents (the "Sealed Filings"). Defendant Audible Magic, Corp. ("Audible Magic") takes no position on this motion. Blue Spike and Garteiser oppose this motion in its entirety.

**I.  INTRODUCTION**

This case started, and should have ended, with a simple informal request to unredact and make available documents that were improperly filed under seal. Court records are presumptively open. EFF, or any other member of the public interested in this case, should be able to freely inspect court records and learn about parties' use of the judicial system, unless a party can show good cause to prevent the public from accessing those records.

In this case a significant number of filings were made under seal without such a showing, contrary to the well-established rights protected by the First Amendment and the common law. EFF was aware of significant public interest in the patents at issue in this case and the arguments advance by the parties, so EFF contacted the parties to ask them to enable public access to those documents. Audible Magic did not oppose EFF's request, so long as it was able to redact legitimately confidential information. EFF agreed with Audible Magic that that was proper.

Blue Spike, by contrast, not only rebuffed EFF's request but refused even to meet and confer. When EFF was therefore forced to file a motion to intervene in order to defend its rights (and those of the public) to gain access to the Sealed Filings, Blue Spike opposed the motion in full, making a host of spurious accusations about EFF's motivations for intervening. This Court

ignored those claims and allowed EFF to intervene. Nonetheless, when EFF filed its motion to unseal, Blue Spike still refused to budge an inch, taking the position that *nothing* in the court record should be unsealed.

Now that this Court has ruled for EFF and unsealed the docket, we've learned that Blue Spike had *no* confidential information in the Sealed Filings. Indeed, Blue Spike did not even ask for anything to be redacted. According to Blue Spike, it only filed under seal because of *Audible Magic's* confidential information. Thus Blue Spike's opposition to EFF's motion was completely baseless: it had no grounds to request this Court prevent public access once Audible Magic was willing to provide EFF and the public with redacted documents.

Blue Spike and its counsel Garteiser have wasted this Court's, Audible Magic's, and EFF's time, and unreasonably and vexatiously multiplied these proceedings. EFF requests that this Court hold Garteiser and Blue Spike accountable for that behavior by awarding to EFF the attorneys' fees and costs incurred in filing its motions to intervene and unseal.

## II.   FACTUAL BACKGROUND

### A.   EFF Attempts to Resolve the Issues Without Court Intervention

On March 11, EFF contacted both Audible Magic and Blue Spike to ask them to enable public access to sealed court documents in the above-captioned matter. *See* Dkt. 90-5 at 12-13. In its original email to counsel for the parties, EFF noted its concern regarding the volume of sealed docket entries, including the entirety of dispositive court rulings, and cited to law protecting public access to court records. *Id.*

On March 14, Garteiser informed EFF that Blue Spike would not agree to voluntarily unseal, and that he was available to meet and confer on March 17, 2016 between 2 and 5 p.m. *Id.* at 11. On March 17, Garteiser confirmed that he could meet and confer that day at 4 p.m. Central Time. *Id.* at 10. Eight minutes before the previously scheduled meet and confer was set to begin,

Garteiser demanded (on Blue Spike's behalf) that EFF make an entry of appearance and that absent such appearance, Garteiser would not meet and confer with EFF as scheduled. *Id.* at 8.

In the meantime, counsel for Audible Magic met and conferred with EFF and agreed to file public-redacted versions of the filings, redacting only legitimately confidential information. *See* Dkt. 90 at 1; Dkt. 97 at 2.

Audible Magic's agreement made no difference to Blue Spike or Garteiser. Instead, Garteiser and Blue Spike continued to insist that the Sealed Filing should remain sealed. *See* Dkt. 90-5 at 2-3. EFF explained its desire to avoid court intervention. *Id.* at 4-5, 7. EFF also stated that it was still willing to meet and confer with Garteiser and Blue Spike not only regarding EFF's proposed motions, but also regarding Garteiser's demands. *Id.* In response, Garteiser made unfounded accusations regarding EFF's interests in this matter and in unsealing, and demanded any meeting must occur in person, despite L-R. 7(h), which permits telephonic conferences. *Id.* at 2-3. A final request from EFF to resolve the issues amicably went unanswered. *Id.* at 2.

### B. EFF Files Its Motion and Blue Spike Opposes

On March 29, 2016, EFF filed its motion to intervene and unseal. *See* Dkt. 90. Shortly after EFF filed its motion, counsel for Audible Magic contacted EFF and Garteiser, again asking if the parties could resolve this issue without court intervention. *See* Dkt. 97-3. Instead of responding to Audible Magic's email, see Dkt. 97-1 at ¶ 3, Garteiser filed an opposition to EFF's motion. In the opposition, Garteiser argued, on behalf of Blue Spike, that EFF did not have standing to intervene, and that EFF should not be allowed to access court documents because of its "advocacy agenda" and alleged financial donations from non-party Google, Inc. *See* Dkt. 94 at 8. None of these arguments could (or did) survive legal scrutiny.

Before EFF's deadline to reply, this Court granted EFF leave to intervene and gave Blue Spike the opportunity to file a further opposition to EFF's motion to unseal. *See* Dkt. 95 at 3-4. In granting leave to intervene, the Court rejected Blue Spike's standing argument and found that permitting EFF to intervene would not prejudice to Blue Spike. *See id.* at 2-3.

On May 2, 2016, Garteiser filed Blue Spike's opposition to EFF's request to unseal. Dkt. 102. The opposition again made baseless and irrelevant aspersions as to EFF's motivations. *See id.* at 1-3. In addition, Garteiser argued that a private agreement between Blue Spike and Audible Magic authorized the blanket sealing of court documents, ignoring the controlling case law EFF cited regarding the public's rights under the First Amendment and the common law. *Id.* at 4. Further, Garteiser implicitly misrepresented EFF's position, claiming that EFF sought access to legitimately confidential information. *See* Dkt. 102 at 5 (stating that "if a company's sensitive data cannot be sealed, it is hard to imagine what data *could* be sealed"). In fact, EFF had repeatedly stated that it only sought information that was *not* legitimately confidential. *See, e.g.*, Dkt. 90 at 15 (requesting the Court order the filing of public version of each of the Sealed Filings, "redacted only to conceal information that a party can show is legitimately confidential."). Garteiser also argued, among other things, that *Blue Spike* would be prejudiced because it "will be required to respond to EFF's complaint and coordinate redactions of no fewer than forty-seven documents." *Id.* at 5.

Audible Magic did not oppose EFF's motion. Instead, it filed a notice with the court recognizing that EFF "correctly state[s] the Fifth Circuit's standard for sealing" and noting that if the Court ordered documents unsealed, it would "work with Blue Spike to prepare proposed redacted versions of the documents that are the subject of EFF's request." *See* Dkt. 97 at 3. EFF filed its reply on May 12, 2016. *See* Dkt. 103.

4

### C. The Court Grants EFF's Request to Unseal

On May 17, 2016, this Court granted EFF's motion to unseal. *See* Dkt. 106. In doing so, the Court noted that "Blue Spike does not explain how the Protective Order supersedes Supreme Court precedent regarding the presumption favoring public access to court documents." *Id.* at 6. The Court further noted that "EFF correctly states the Fifth Circuit's standard for sealing." *Id.* The Court rejected Garteiser and Blue Spike's argument that EFF's motives were improper, noting that "EFF is a public interest organization, actively involved in the patent reform debate." *Id.* at 8. Finally, the Court granted EFF the full relief it requested, although it modified the procedure by which it would be granted. *Id.* at 8-9.

### D. Blue Spike Admits It Had No Basis to Oppose EFF's Motions

In its Order granting EFF's Motion to Unseal, the Court ordered the parties to "submit a particularized showing regarding portions of the record... that it seeks to seal." Dkt. 106 at 10. It also ordered the parties to provide public-redacted versions for any document that contained information a party sought to keep from the public record. *Id.* at 9.

On May 31, 2016, Audible Magic timely filed its response to the Court order, identifying those documents that it sought to keep entirely sealed, and providing public-redacted versions of those documents that were not entirely confidential. *See* Dkt. 108. Audible Magic noted that it had "attempted to contact Blue Spike so that a single redacted version of each filing could be provided to the Court and filed publicly" but that "Blue Spike failed to respond to Audible Magic's email and provide its redactions." *Id.* at 5.

Garteiser and Blue Spike did not respond to Audible Magic and filed nothing with this Court on the court-ordered deadline.

Instead, on June 3, 2016, three days after the Court deadline had passed, Blue Spike filed a "notice," admitting that it did not claim that even a single docket entry contained Blue Spike

5

confidential information and, for the first time, claiming that the only reason it filed documents under seal was because those documents contained *Audible Magic's* confidential information. *See* Dkt. 113 at 1. Blue Spike said, "if Audible Magic does not longer wants [sic] certain information designated, it can self-de-designate as it appears it has done with its recent submissions to the Court." *Id.* Garteiser and Blue Spike did not explain why Blue Spike had never informed the court or the parties that it was opposing EFF's motion on behalf of a party that actually agreed to that motion.

Despite numerous opportunities to avoid wasting the Court and the parties' time, Garteiser and Blue Spike forced EFF, Audible Magic, and this Court to expend time and resources addressing Blue Spike's insistence on keeping public information from the public, as well as litigating numerous collateral issues, including standing, the applicability of a privately agreed protective order, and EFF's motivations in bringing this motion. Itemized timesheets showing the amount of legal work performed by Durie Tangri, as counsel for EFF, are attached hereto as Exhibits C-F to the Declaration of Stephen Rodriguez.

### III. ARGUMENT

    **A.  The Court Can Sanction Garteiser for Its Unreasonable and Vexatious Oppositions to EFF's Motion Under 28 U.S.C. § 1927 and Can Sanction Blue Spike and Garteiser Under the Court's Inherent Authority**

28 U.S.C. § 1927 provides that "[a]ny attorney ... who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." Evidence of "bad faith, improper motive, or reckless disregard of the duty owed to the court" suffices to show sanctions under 28 U.S.C. § 1927 are appropriate. *See Edwards v. General Motors Corp.*, 153 F.3d 242, 246 (5th Cir. 1998).

In *Edwards*, the Fifth Circuit reviewed an award of sanctions against an attorney who "deliberately kept her meritless case alive for no purpose other than to force GM to settle or to defend it." *Id.* The Fifth Circuit found no abuse of discretion in the award of sanctions, finding that it was an abuse "of judicial process to harass an apparently innocent defendant into paying money to which her client had no rightful claim." *Id.* at 247.

Similarly, courts have inherent authority to sanction parties and counsel in the "exercise of the equity powers of the court." *Fairley v. Patterson*, 493 F.2d 598, 605 (5th Cir. 1974); *see also Chambers v. Nasco, Inc.*, 501 U.S. 32, 45 (1991) (courts retain inherent authority to sanction bad faith conduct). In *Fairley*, the Fifth Circuit detailed several rationales that could be used to award attorneys' fees under the inherent authority of the court. Specifically, a court could award fees where a "party's conduct has been vexatious, groundless, or in bad faith" and where the party who seeks the fees has "aided in effectuating important congressional and public policies." 493 F.2d at 606. The court noted a corollary that "[w]hen a suit alleging violation of clearly established law in a particular area is filed, and the defendants, in the face of evident violation of this law, persist in forcing the plaintiffs to expend efforts in preparing and/or conducting a trial, then attorneys' fees may appropriately be awarded." *Id.* The court also specifically held that "allowable fees and expenses may not be reduced because [the] attorney was employed or funded by a civil rights organization and/or tax exempt foundation or because the attorney does not exact a fee." *Id.*

Courts have sanctioned parties and counsel where there has been a frivolous claims of confidentiality in court records. *See In re Violation of Rule 28(D)*, 635 F.3d 1352 (Fed. Cir. 2011) ("*Violation of Rule 28(D)*").

In *Violation of Rule 28(D)*, the Court of Appeals for the Federal Circuit had issued an

7

order to show cause asking the appellant, Sun, to explain why it "appear[ed] Defendants-Appellants marked material as confidential in violation of the rules of [the Court of Appeals for the Federal Circuit]" when it marked as confidential "case citations, direct quotations from published opinions of the cases cited, and legal arguments[.]" *Id.* at 1356. In response to the order to show cause, the appellants refused to admit error in designating the information as confidential, and instead attempted to justify the use of confidentiality designations because it was "concerned that citation to certain case law would have revealed" information about a confidential settlement agreement. *Id.*

The Federal Circuit rejected the appellant's arguments and sanctioned both the appellant and the attorneys that represented it. *See id.* at 1361. The Court noted the public's constitutional right to access court information, and a party's duty to show "good cause" to limit it. *Id.* at 1356-57 (citing *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 579 (1980) and *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 598 (1978)). The Court held:

> No good faith reading of our rule could support Sun's marking of its legal arguments as confidential. The action of Sun's counsel bespeaks an improper casual approach to confidentiality markings that ignores the requirements of public access, deprives the public of necessary information, and hampers this court's consideration and opinion writing.
>
> By designating material as confidential that falls outside the scope of the protective order, counsel for Defendants-Appellants violated Federal Circuit Rule 28(d).

*Id.* at 1360.

### B. EFF Should Be Awarded Its Fees

Here, there is ample evidence of Garteiser's and Blue Spike's bad faith, improper motive, or at the very least, reckless disregard for the duties owed to this Court.

From the outset, EFF provided Garteiser and Blue Spike with ample case law and

8

authority, including *Violation of Rule 28(D)*, confirming the public's constitutional right to access court documents subject only to redactions necessary to protect legitimately confidential information. *See* Dkt. 90-5 at 12. Garteiser and Blue Spike did not attempt to engage with or distinguish this legal precedent, but focused instead on false and irrelevant aspersions about EFF's motivations. Garteiser and Blue Spike also refused to meet and confer with EFF or Audible Magic, despite repeated attempts. *See generally id.* As a result, EFF was forced to file a motion to intervene and a separate motion to unseal, and forced the Court to address Blue Spike's opposition to public access to court records in two written orders.

Such vexatious conduct might already merit sanctions. *See Fairley*, 493 F.2d at 606. What surely merits sanctions, is however, is the fact that all of this was completely unnecessary. Despite its repeated oppositions and complaints, Garteiser and Blue Spike now admit Blue Spike does not have—and has never had—*any* confidential information in the Sealed Filings. *See* Dkt. 113. Garteiser claims that the only reason the Sealed Filings were under seal was to protect Audible Magic, Blue Spike's litigation opponent and a party that did not oppose EFF's motion.

Had Garteiser and Blue Spike admitted as much when EFF initially sought access to the documents, EFF, the parties and the Court could have avoided investing substantial resources in resolving this dispute and enabling public access to the filings. *See* Decl. of Stephen Rodriguez, at ¶¶ 2-6 and associated exhibits; *see also* Decl. of Mark Lemley.[1]

---

[1] Garteiser claims that "Blue Spike has always had genuine issue with EFF intervening instead of Google, whom Blue Spike believes is the real party in interest behind this request." Dkt. 113 at 1. But even if it were true that Blue Spike believed this, despite the absence of any evidence whatsoever to support it, this cannot explain Garteiser's failure to inform the parties and the Court it had no confidential information in the Sealed Filings. Moreover, even if Google were the real-party-in-interest (it is not), Garteiser has never explained how that information would be relevant to whether a private litigant can unilaterally prevent the entire public from accessing court documents.

This is ample evidence that Garteiser "deliberately kept [Blue Spike's] meritless [opposition] alive for no purpose other than to force [EFF] to settle or to defend it." *Edwards*, 153 F.3d at 246. That is, Garteiser and Blue Spike opposed EFF, required EFF and its attorneys to incur the costs of litigating, prevented public access to court records when there was no valid, justifiable reason for Garteiser and Blue Spike to do so, and thus necessitated this Court's intervention. This is also ample evidence that Garteiser acted in bad faith and in reckless disregard of the well-established constitutional rights of the public. *See Fairley*, 493 F.2d at 606.

Since Blue Spike had no confidential information in the Sealed Filings, it had no basis to oppose EFF's motion. *See Violation of Rule 28(D)*, 635 F.3d at 1360. The Sealed Filings did not contain "data Blue Spike reasonably believed was protected." *See* Dkt. 102 at 5. Since Blue Spike had no confidential information to redact, it was not required to "coordinate redactions," a task it claimed was "especially difficult" and thus grounds to deny unsealing. *Id.* The fact that Garteiser still made these frivolous allegations on behalf of Blue Spike shows that it was acting in bad faith, or at the very least out of reckless disregard for the truth. In doing so, Garteiser acted unreasonably and vexatiously to multiply proceedings. Those proceedings would not have been necessary if Garteiser had simply admitted the truth—that the Sealed Filings did not contain any of Blue Spike's confidential information. After all, Audible Magic offered to provide redacted versions of the Sealed Filings before this proceeding even began.

### IV.   CONCLUSION

Garteiser and Blue Spike had a duty to this court to not file meritless oppositions and to not file in bad faith or in reckless disregard of the law. For the foregoing reasons, the Court should sanction Blue Spike and its attorneys, jointly and severally, by granting EFF an award of

its attorneys' fees incurred in bringing its Motion to Intervene and Unseal, in the amount detailed in Exhibits C-F to the Declaration of Stephen Rodriguez.

Dated:  June 27, 2016

By:       */s/ Vera Ranieri*
      Vera Ranieri

Vera Ranieri (admitted E.D. Tex.)
(CA Bar No. 271594)
ELECTRONIC FRONTIER FOUNDATION
815 Eddy Street
San Francisco, CA 94109
Phone: (415) 436-9333
Email: vera@eff.org

Mark A. Lemley (admitted E.D. Tex.)
(CA Bar No. 155830)
DURIE TANGRI, LLP
217 Leidesdorff Street
San Francisco, CA 94111
Phone: (415) 362-6666
Email: mlemley@durietangri.com

Attorneys for Intervenor
Electronic Frontier Foundation

**CERTIFICATE OF SERVICE**

I, Vera Ranieri, hereby certify that on June 27, 2016 the within document was filed with the Clerk of the Court using CM/ECF which will send notification of such filing to the attorneys of record in this case.

*/s/ Vera Ranieri*
Vera Ranieri

**CERTIFICATE OF GOOD FAITH CONFERENCE**

Pursuant to Rule CV-7(i), I hereby certify that on June 15, 2015 Vera Ranieri and Alex H. Moss, counsel for EFF, telephonically met and conferred with Randall Garteiser and Jerry Goldstein, counsel for Blue Spike, in an attempt to resolve the issues presented in this motion. The parties were unable to resolve the issues and thus there remains an open issue for the court to resolve. I further certify that counsel for Audible Magic, LLC confirmed to EFF that it takes no position on this motion.

*/s/ Vera Ranieri*
Vera Ranieri
