IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | | |
|---|---|---|
| Electronic Frontier Foundation | § § § | |
| *Plaintiff*, | § § | 6:16-mc-022 |
| v. | § § § | |
| Blue Spike, LLC | § § § | |
| *Defendant*. | § § § § | |

**DEFENDANT BLUE SPIKE'S OPPOSITION TO PLAINTIFF'S MOTION FOR SANCTIONS AND THE COURT'S INHERENT AUTHORITY**

TABLE OF CONTENTS

I.  INTRODUCTION ................................................................................................................ 1

II.  FACTUAL BACKGROUND .............................................................................................. 2

    A.  EFF Compares Scott Moskowitz to a Child Killer and Pedophile

    B.  EFF Ambushes Blue Spike on the Eve of Trial................................................................. 2

    C.  EFF Wants to Look Over Everyone's Shoulder................................................................ 3

    D.  Garteiser Opposed EFF's Motions for Good Cause and in Good Faith............................. 4

    E.  Garteiser Timely Communicated with EFF's Counsel...................................................... 5

III.  ARGUMENT ....................................................................................................................... 6

    A.  Garteiser Opposed EFF on Grounds of Standing and Undue Burden, Thus with Proper Motive and with Full Regard for its Duty to this Court Therefore 28 U.S.C. § 1927 Does Not Apply ….. 6

    B.  Garteiser Opposed EFF in Good Faith Therefore the Equitable Remedy of Attorney's Fees Is Inappropriate................................................................................................................. 8

    C.  EFF is Not Congress's Proxy and is Not a Private Attorney General................................ 8

    D.  EFF's Relationship with Google Pertains to this Matter and Inhibits EFF's Ability to Don a Private Attorney General's Mantle.......................................................................................... 9

IV.  CONCLUSION ................................................................................................................... 10

Blue Spike, LLC ("Blue Spike") and its counsel Garteiser Honea, P.C. ("Garteiser") oppose Electronic Frontier Foundation's ("EFF") motion for an order for sanctions under 28 U.S.C. §1927.  EFF mischaracterizes Garteiser's good-faith advocacy in defense of Blue Spike as "baseless, unreasonable, and vexatious opposition."  Blue Spike and Garteiser respectfully move for this Court to deny EFF's motion.

**I.      INTRODUCTION**

Blue Spike is the holder of rights to patented intellectual property.  Blue Spike attempted to defend those rights.  EFF, despite openly admiring Blue Spike's patented technology, does not like that Blue Spike defends its rights.  So, on the eve of the trial between Blue Spike and Audible Magic, EFF intervened and created an unreasonable burden on Blue Spike to review 47 documents for potential redactions.  Then, it proposed a draft order to Blue Spike and Audible Magic where leading up to the trial Blue Spike would and Audible Magic would have to file modified redacted versions leading up to the trial and through the trial.  This was above and beyond the Protective Order in this case and EFF did not offer to pay for this additional workload.  The amount is particularly daunting given Audible Magic, right or wrong, had designated a majority of its documents produced under the Protective Order as "confidential," "highly confidential," or "outside attorneys' eyes only.

EFF sought to manipulate the Court and force Blue Spike to wade through quicksand on the eve of trial.  EFF makes no secret of its cabal to eliminate all software patents and punish all defenders of software patent rights.  EFF admits it would like to eradicate all software patents.  In particular, EFF attacks those software patents that the "court" of EFF deems "stupid," a "court" with "judges" appointed by primary benefactor Google, Inc.  EFF name-calls Blue Spike's patents "stupid," but the other side of EFF's mouth praises the public value of the subject matter taught by those same patents.

EFF has slandered Blue Spike.  EFF mouthpiece Nate Cardozo compared Blue Spike founder and inventor Scott Moskowitz to a child murderer and pedophile.  EFF argued that because there is a

pedophile on this planet that owns multiple patents, and Mr. Moskowitz owns patents, Mr. Moskowitz by implication must be a pedophile.  EFF does not deny this slander.



*Figure 1.* December 4, 2015 on-line post by EFF's Nate Cordozo slandering Blue Spike's Scott Moskowitz by associating him with "convicted child murderer and pedophile, David Alan Westerfield."  *See* Exhibit 1.

The Court should deny EFF's request for fees and sanctions brought by the Durie firm, that volunteered its time throughout this whole process on a pro bono basis to EFF.

## II.       FACTUAL BACKGROUND

### A.       EFF Compares Scott Moskowitz to a Child Killer and Pedophile

In the Court's Order denying in part and granting in part EFF's motion, the Court indicated that EFF should be allowed to participate in an active debate about patents.  That's true, but that isn't what EFF does.  Instead, EFF uses its website as a bully pulpit to attack certain patent litigants.  For example,

EFF mouthpiece Nate Cardozo tweeted this about Blue Spike's Scott Moskowitz, "You know who else holds a load of patents?  Convicted **child murderer and pedophile**, David Alan Westerfield.  So what?" *See* Exhibits 1-2.  This is not journalism.  This is a personal attack against someone.  Compare an inventor that contributed to society to the arm pit of society.  That's wrong.  Although EFF made this slanderous comment about Moskowitz in December of 2015, EFF still waited until the eve of trial to file its request in this litigation.

    **B.**  **EFF Ambushes Blue Spike on the Eve of Trial in Order to Maximize Casualties**

Again, after posting its slanderous on-line post about Moskowitz, EFF waited months until the eve of trial to intervene.  *See* Dkt. 90.  EFF has known of the action between Audible Magic and Blue Spike since at least September 30, 2014, when it published a blog post titled, "Serial Litigant Blue Spike Wins September's Stupid Patent of the Month."  Daniel Nazer, *'Serial Litigant Blue Spike Wins September's Stupid Patent of the Month,'* EFF, September 30, 2014, https://www.eff.org/deeplinks/2014/09/serial-litigant-blue-spike-wins-septembers-stupid-patent-month.

Despite EFF's statement that Blue Spike's steganography-related patents were "stupid," EFF told PCWorld magazine that it recommended digital watermarking and steganography, the precise subject matter that Blue Spike inventor Scott Moskowitz pioneered.  Jared Newman, *'DRM for JPEG? Standards Group Could Make it Happen,'* PC World, October 15, 2015, http://www.pcworld.com/article/2993351/software-web/drm-for-jpeg-standards-group-could-make-it-happen.html ("As for the theft issue, the EFF recommends watermarking, steganography").  Although EFF knew early of the proceedings in this matter, EFF waited until just before trial, on April 29th, 2016, to make an appearance.  *See* Dkt.90.

    **C.**  **EFF Wants to Look Over Everyone's Shoulder as Long as No One Looks Over Its Own**

"EFF has demonstrated interest in shedding light on the functioning of our patent system," but who sheds light on the functioning of EFF?  *See, e.g.*, *Traffic Information, LLC v. Farmers Group, Inc.*, Decl. of Vera Ranieri, Dkt. 93-1, at ¶¶ 3-16.  When Blue Spike presented evidence of bias in the form of

3

payments received from Blue Spike opponent Google, Inc., EFF cried foul. *See* EFF's Motion for Sanctions at 4. EFF would not address Blue Spike's concerns about Google's potential interest, but would seek to bleach out these evidence-based bloodstains as "unfounded" and "baseless." *Id.* at 3,4. While EFF admonishes this Court, Audible Magic, and Blue Spike that "Patent Lawsuits Should Not Be Shrouded in Secrecy," perhaps EFF should not be shrouded in secrecy, either.[1]

### D. Garteiser opposed EFF's Motions with Good Cause and in Good Faith

EFF's requested motion to unseal documents would force Garteiser to review 47 documents for redactions, regardless of how many redactions were made. Garteiser had an obligation to its client, Blue Spike, to not incur unnecessary legal fees by filing redactions for the public that were outside the scope of the protective order. Garteiser argued that EFF lacked standing, and this argument was made using valid legal authority. *See generally*, Dkt. 94, 102.

After the Court granted EFF standing to file its motion, EFF moved for relief of the Court without first attempting to workout the scope of its request with Blue Spike or Audible Magic. See Exhibits 3, 4. EFF violated the Civil Local Rule 7 by not first meeting and conferring with Blue Spike and Audible Magic, actual parties to the litigation. On April 19, 2016, counsel for EFF provided its Proposed Order to Audible Magic and Blue Spike, only after filing its motion to unseal documents. *See* Exhibit 3 at 1. It was not until April 19 did Blue Spike and Audible Magic, parties to the litigation, even know the relief EFF sought from the parties. *See* Exhibit 3. Blue Spike took particular objection to the following time-consuming (for counsel for Blue Spike) the following paragraph proposed by EFF in its proposed order:

> IT IS FURTHER ORDERED that **going forward, a party wishing to file under seal must file a motion demonstrating a particularized showing of good cause to seal, and contemporaneously file public-redacted versions of those documents** that redacts only that information for which good cause to seal is alleged. Absent such a motion the clerk will not accept the document for filing under seal.

---

[1] Vera Ranieri, 'Patent Lawsuits Should Not Be Shrouded in Secrecy,' EFF, March 30, 2016, https://www.eff.org/deeplinks/ 2016/03/blue-spike-patent-lawsuits-should-not-be-shrouded-secrecy.

4

Exhibit 3 at Page 3 of Draft EFF Proposed Order emailed by counsel for EFF to counsel for Audible Magic and Blue Spike on April 19, 2016.

When finally provided on April 19 with an actual accounting of the request EFF wanted, as opposed to vague requests to unseal documents EFF previously provided, Blue Spike's Counsel, Garteiser, immediately raised its objections to EFF the very same day, reciting in pertinent part that EFF is altering the Court's Local Rules regarding filing document under seal. *See* Exhibit 4 at 1 ("Also, the last paragraph [of EFF's proposed order] creates a change to the local rules. Is that your intention?" said Randall Garteiser in an email dated April 19, 2016.). EFF refused to work with counsel for both Audible Magic and Blue Spike. *Id.* EFF instead told Blue Spike to file its objections in its opposition. Exhibit 4 at 1. Specifically, counsel for EFF stated to counsel for Blue Spike, that "Mr. Garteiser, **EFF's proposed order is consistent with the local rules. If Blue Spike disagrees, it may do so in its opposition motion**. Regards, [Alex Moss]." EFF did not properly meet and confer prior to filing its motion to unseal documents. Such run-to-the-courthouse-motion-practice should not be encouraged by awarding fees much less sanctions.

Additionally, EFF never indicated it would pay Blue Spike for the added expense to Blue Spike. EFF knew or should have known its requested relief would create additional workload for Blue Spike's counsel. Instead, EFF just summarily said its requested relief was "consistent with the local rules." *Id.* Counsel for Audible Magic agreed with Garteiser that EFF's requested relief was not consistent with the E.D. Texas local rules. Exhibit 4 at 4. Like Blue Spike, Audible Magic attempted to explain that EFF's requested relief in its proposed order was not consistent with the local rules, but to no avail.

> Randall [Garteiser],
>
> Thank you for your email. **Audible Magic disagrees with the proposed order [presented by EFF in the attached email string]**, to the extent that it suggests that all of the subject court documents will be unsealed **at the moment the motion to unseal is granted (assuming it were granted)**, without a further process to preserve confidentiality of particular information in those documents. As indicated in Audible

5

    Magic's response to EFF's [first] motion [to intervene and unseal], Audible Magic asks the court to define a process to facilitate filing of redacted versions of the documents (for example, a motion to seal process). **As there is no motion to seal process outlined in the local rules at present,** we will await the court's guidance on how it wishes to proceed in that regard. We will reiterate our request for a court-defined redaction process in Audible Magic's future submissions on this motion.

    Sincerely,

    Gabe [Gabriel Ramsey, Counsel for Audible Magic]

Exhibit 4 at 4. This email from Counsel for Audible Magic copied on it outside counsel for EFF (Alex Moss) and EFF's inside counsel (Vera Ranieri). *Id.*

Thus, with just cause and in good faith, Blue Spike opposed EFF's request to unseal documents that included a provision that severely impacted Blue Spike's ability to prepare for trial and was not in accordance with the local rules, the Discovery Order in this case, or the Protective Order in this case.

    **E.    Garteiser Timely Communicated with EFF's Counsel**

EFF makes a false statement to the Court that "Garteiser and Blue Spike also refused to meet and confer with EFF or Audible Magic, despite repeated attempts." As outlined above in Section II.D. in great detail EFF's characterization of events is misleading. On behalf of Blue Spike, Garteiser maintained timely communication with EFF and as well as Audible Magic. *See* Exhibits 3,4.

**III.    ARGUMENT**

    **A.    Garteiser Opposed EFF on Grounds of Standing and Undue Burden, Thus with Proper Motive and with Full Regard for its Duty to this Court Therefore 28 U.S.C. §1927 Does Not Apply**

Title 28 U.S.C. §1927 is inapplicable when an attorney acts with good cause and in good faith. A party pursuing sanctions must show evidence of "bad faith, improper motive, or reckless disregard of the duty owed to the court." *See Edwards v. General Motors Corp.*, 153 F.3d 242, 246 (5th Cir. 1998). In *Edwards*, the attorney kept a case alive to extend proceedings. *Id.* The Fifth Circuit found that the attorney was "harass[ing] an apparently innocent defendant." *Id.* That is not the case here.

Blue Spike is the party that is harried; EFF extends these proceedings; Blue Spike is protecting itself from the ambush of a party with questionable standing that seeks to impose upon Blue Spike an untimely and unreasonable burden. Among the players in this drama, the source of harassment is EFF, and the ones harassed are Blue Spike, Garteiser, and this Court. EFF's reliance upon *Edwards* is misplaced.

EFF relies upon *In re Violation of Rule 28(D)*, but this reliance is also misplaced. The sanctioned attorney in *In re Violation of Rule 28(D)* **knowingly** marked non-confidential material as confidential. *In re Violation of Rule 28(D)*, 635 F.3d 1352, 1362 (2011). Blue Spike **did not knowingly** mark material confidential. Blue Spike did not act in bad faith. To the extent this is implied in EFF's accusation that Blue Spike didn't want to unseal, this is based on a faulty assumption that Blue Spike could only have opposed in bad faith. Blue Spike opposed on grounds of standing and burden. Also, Blue Spike did not designate documents to keep them from the public, the documents Blue Spike filed were mandated to be filed under seal by the designations Audible Magic gave the documents under the Protective Order.

Rather than burden this Court and extend proceedings, Blue Spike elected not to mark anything outside the scope of the narrowly tailored redactions provided by Audible Magic. Blue Spike acted with integrity and, if anything, *In re Violation of Rule 28(D)* illustrates that Blue Spike acted in good faith.

**B.     Garteiser Opposed EFF in Good Faith Therefore the Equitable Remedy of Attorney's Fees Is Inappropriate**

There are many equitable doctrines that allow a party the remedy of attorneys' fees, but "equitable shifting is unavailable when a party acts in good faith." *West Virginia University Hospitals, Inc. v. Casey*, 499 U.S. 83, 93 (1991), (citing *Coughenour v. Campbell Barge Line, Inc.*, 388 F.Supp. 501, 506 (WD Pa. 1974), the Court held that recouping experts' fees was not entwined with recouping attorneys' fees, but this holding was superseded by the 1991 Civil Rights Act). Certainly "[t]he rule on the allowance of attorneys' fees is settled that an award may be made in the exercise of the equity powers

7

of the court." *Fairley v. Patterson*, 493 F.2d 598, 605 (5th Cir. 1974). However, the award of attorneys' fees flows only to "a litigant whose opponent acts in bad faith in instituting or conducting litigation." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 48 (1991).

Here, Garteiser acted in good faith – without intent to deal unfairly. EFF characterizes Garteiser's opposition to EFF's motion to unseal as "vexatious, groundless, and in bad faith." Garteiser was not vexatious. Emails between Garteiser and EFF and its attorneys reveal a pattern of timely and open communication between attorneys. *See* Section II.D. and II.E. Garteiser's opposition was not groundless – the Proposed Order EFF sent simply asked for too much going forward and then EFF filed its motion it already had prepared without further discussions. *Id.*; Exhibit 3,4.

Garteiser's opposition was not groundless. Garteiser opposed on the grounds that EFF had no standing, did not offer to pay for the cost of the completing the requested document review workload, which was clearly outside the scope of the Protective Order in the case, and the uncanny timing of EFF's request on the eve of the Audible Magic trial and during the Google Appeal. Audible Magic as well as Blue Spike took issue with EFF's requested relief, so it was plainly not groundless. *See* Section II.D above; Ex. 3 at 2-4.

Lastly, Garteiser acted in good faith. Garteiser acted knowing that EFF's unfair ambush intervention would sap already attenuated attorney resources from a small firm. A small firm heading into trial against a much larger law firm, who was also in the midst of an appeal involving Google at the Federal Circuit. The project of reviewing 47 sealed documents for confidential information on the eve of finalizing pre-trial obligations, such as, trial subpoenas, deposition designations, witness testimony at trial, counter deposition designations, objections to deposition designations made by Audible Magic, jury instructions, jury questionnaire, jury voir dire questions, motions in limine, objections to motions in limine, impromptu court orders related to the narrowing of issues for trial, and numerous meet and confer sessions with opposing counsel (both actually scheduled at the time and anticipated at the time of EFF's

request) was simply not doable. EFF never coordinated with Blue Spike or Audible Magic to come up with a compromise or work out timing of its request. Instead, it filed its motion in violation of CV-7. Had the Court awarded EFF all of the relief it requested, it would have dramatically interfered with Garteiser's ability to represent Blue Spike prior to and during trial. Garteiser's opposition was not vexatious, groundless, nor in bad faith. The Court actually agreed and modified EFF's requested relief. Thus, equitable shifting is unavailable to EFF.

### C. EFF is Not Congress's Proxy and Should Not Be Considered a Private Attorney General

In *Roadway Exp., Inc. vs. Piper*, the Supreme Court explains "that in narrowly defined circumstances federal courts have inherent power to assess attorney's fees against counsel." *Roadway Exp., Inc. v. Piper*, 447 U.S. 752, 765 (1980). One category of exceptions is the "common fund exception" which allows a court to award attorneys' fees to a party whose litigation efforts directly benefit a statutorily protected class. *Chambers v. NASCO, Inc.*, 501 U.S. 32, 45 (1991). The fiction of the "private attorney general" is generally encountered in the enforcement of civil rights, employment discrimination, police brutality, water pollution, and RICO cases. *See, e.g.*, *Fairley v. Patterson*, 493 F.2d. 598, 606 (1974).

Here, EFF aspires to broaden the scope of precedent to include patent litigation, that is, EFF proposes to become Patent Law's Private Attorney General. *See* EFF's Motion for Sanctions at 7, ("expenses may not be reduced because [the] attorney was employed or funded by a civil rights organization and/or tax exempt foundation.") However, there is genuine concern: does EFF work for the public when moving to unseal documents and then doing nothing related to civil rights thereafter, or does EFF work more directly for Google, Inc., in harassing its master's opponent with shady litigation tactics?

Allowing EFF to recover attorneys' fees in this matter would create a dangerous precedent that would generate additional copycat motion practice to would strain on Court resources.

9

### C. EFF's Relationship with Google Pertains to this Matter and Inhibits EFF's Ability to Don a Private Attorney General's Mantle

Fee shifting, as authorized by *Roadway* and related authority (*See, e.g.*, *Sprague v. Ticonic Nat. Bank*, 307 U.S. 161 (1939)), requires a genuine public benefit. *Roadway Exp., Inc. v. Piper*, 447 U.S. 752, 765 (1980).

Here, EFF acts as Google's wolf wearing First Amendment sheep's clothing. EFF has not denied that in 2011 it received a $1 million cy pres award by Google, over one-sixth of EFF's revenue that year. *See* Dkt. 94  EFF has not denied that Google has donated to EFF for years. *Id*. Google opposes Blue Spike in a matter before the Federal Circuit. Because EFF cannot claim to be a legitimate private attorney general for purposes of granting authority to a Federal Court to shift fees, this Court should refrain from setting such precedent.

Again, if any fee shifting needed to take place, it was presented to EFF that they pay Garteiser to do redactions and review documents not required under the standing Protective Order in the case. EFF never offered to pay those costs, then Durie law firm does this on a pro bono basis for EFF and now requests fees and sanctions. The facts do not support such an award.

### IV. CONCLUSION

Blue Spike and Garteiser acted in good faith in opposition to EFF's motion. There was a genuine question of standing that Blue Spike raised, and Garteiser had a duty to its client to avoid unnecessary costs demanded by EFF. Blue Spike had good motive, acted in good faith, and treated its duty to this Court with integrity. Therefore, this Court should deny EFF's Motion for Sanctions.

                              Respectfully submitted,

                              /s/ Randall T. Garteiser
                              Randall T. Garteiser
                               Texas Bar No. 24038912
                               rgarteiser@ghiplaw.com

Christopher A. Honea
 Texas Bar No. 24059967
 chonea@ghiplaw.com
**GARTEISER HONEA, PLLC**
119 W Ferguson St.
Tyler, Texas 75702
Tel/Fax:  (888) 908-4400

Kirk J. Anderson
 California Bar No. 289043
**GARTEISER HONEA, P.C.**
44 North San Pedro Road
San Rafael, California 94903
Telephone:  (415) 785-3762
Facsimile:  (415) 785-3805

*Counsel for Blue Spike, LLC*

**CERTIFICATE OF SERVICE**

      The undersigned certifies that the foregoing document was filed electronically in compliance with Local Rule CV-5(a). As such, this document was served on all counsel who are deemed to have consented to electronic service. Local Rule CV-5(a)(3)(A). Pursuant to Federal Rule of Civil Procedure 5(d) and Local Rule CV-5(d) and (e), all other counsel of record not deemed to have consented to electronic service were served with a true and correct copy of the foregoing by email, on this date stamped above.

      /s/ Randall T. Garteiser

      Randall T. Garteiser